**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ELLIOT OUTERBRIDGE | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  20-2783 |
| | : | |
| DEREK OBERLANDER, *et al.* | : | |

## <u>MEMORANDUM</u>

KEARNEY, J.                                                                               July 30, 2021

A Philadelphia jury convicted Elliot Outerbridge as a sixteen-year-old of murdering twenty-year old Bryon Wilkins. The sentencing judge followed the Pennsylvania General Assembly's mandate of a minimum sentence of thirty-five years to life in prison. Mr. Outerbridge, through counsel, appealed in the Pennsylvania state courts. After losing his appeals, he petitioned the state courts for post-conviction act relief. He raised limited issues. He now seeks habeas relief after the Pennsylvania courts denied his post-conviction relief. He raises a variety of evidentiary and sufficiency of evidence issues as well as a challenge to his sentence of thirty-five years to life. Judge Lloret issued a comprehensive Report and Recommendation analyzing the issues raised in Mr. Outerbridge's habeas Petition.  Judge Lloret recommended we deny it.  Mr. Outerbridge now objects to Judge Lloret's recommendations. Following careful review of Mr. Outerbridge's objections and the analysis of the entire record, we overrule Mr. Outerbridge's objections, deny his Petition for habeas relief, and find no basis to issue a certificate of appealability.

## I.     Facts adduced from trial and public record.

Twenty-year-old Bryon Wilkins, known as "B-Nas," chatted with his friends Ishmael Hardeman, Shakir Bradley, and Jamal Marshall at the intersection of 27th and Berks Streets outside the Johnson Homes in Philadelphia on the morning of August 4, 2010.[1] Elliot Outerbridge, then

sixteen-years-old and known as "Quill," approached the group, pulled out a handgun, and attempted to shoot Mr. Wilkins.[2] The gun jammed, and Mr. Wilkins fled the area on his bicycle.

Mr. Wilkins returned fifteen minutes later to the intersection and continued to talk with his friends Hardeman, Bradley, and Marshall. Mr. Outerbridge returned to the intersection at around 11:00 a.m., pulled out a 9 mm handgun and fired at least nine times, hitting Mr. Wilkins five times in the back, thigh, knee, and ankle.[3] Mr. Outerbridge fled, and Messrs. Bradley and Hardeman drove Mr. Wilkins to Temple University Hospital.

Philadelphia Police Officer Stacey Wilkins responded to a radio call of a shooting at the intersection of 27th and Berks Streets around the same time.[4] A group of approximately twenty people gathered at the shooting told officers a black SUV fled with the shooting victim. Officer Wilkins left 27th and Berks Streets and arrived at the Emergency Room at Temple University Hospital in less than five minutes. Officer Wilkins saw a black SUV on the street outside the entrance to Temple's Emergency Room with Mr. Bradley, the driver, who said his friend, later identified as Mr. Wilkins, had been shot. Officer Wilkins saw a man lying in the backseat of the car with Mr. Hardeman.[5]

Police Officer Patrick Saba arrived at Temple University Hospital to provide back-up to Officer Wilkins. Officer Saba saw a black SUV described as having transported the shooting victim to the hospital and saw three men inside: the driver, Mr. Bradley; a passenger in the backseat, Mr. Hardeman; and the victim, Mr. Wilkins, lying in the back seat with multiple gunshot wounds.[6] Temple University Emergency Room staff rushed Mr. Wilkins into the hospital assisted by Officer Wilkins. Offer Saba secured the SUV and put Mr. Bradley and Mr. Hardeman in his police car for questioning.

An Emergency Room doctor pronounced Mr. Wilkins dead at 11:36 a.m. An autopsy conducted the next day determined the cause of death to be a gunshot wound to the torso from a bullet hitting internal organs, including the heart, and determined the manner of death as homicide.[7]

### *Witnesses' statements to Philadelphia Police.*

Mr. Hardeman gave a statement to police on August 4, 2010.[8] He described the shooting, including he heard gunshots and "saw a guy at 27th Street shooting B-Nas."[9] Mr. Hardeman described the shooter as "about 17 or 19. He was taller than me. I'm 5'7. He's a little chubby," and described the shooter as wearing a white t-shirt and a black or blue baseball cap.[10] On February 8, 2011, Mr. Hardeman identified Mr. Outerbridge from a photo array.[11]

Mr. Bradley spoke to police but did not testify at trial. The record does not reflect the content of Mr. Bradley's statement to police.

On August 28, 2010, Mr. Marshall, also known as "Rusty" or "Russ," gave a statement to police.[12] Mr. Marshall told police he was with Mr. Hardeman and Mr. Wilkins (B-Nas) at the time of the shooting and told police he saw "B-Nas … riding on his bike and then, I seen a chubby boy in a blue hat from around the corner. He just started shooting B-Nas."[13] Police asked Mr. Marshall if he knew the identity of the "chubby boy with the blue hat," and he responded, "Yeah, I call him Quill."[14]

On October 19, 2010, Kalesha Briggs, a resident of the Johnson Homes, gave a statement to police.[15] Ms. Briggs identified Mr. Outerbridge, who she knew as "Quill," from a photo array and told police she saw Quill shoot Mr. Wilkins.[16] Ms. Briggs told police she saw Mr. Outerbridge in the area of 27th and Berks Streets approximately ten to twenty minutes before the shooting.[17] She told police she heard six to seven gunshots and saw Quill shooting.[18]

### *Philadelphia Police issue an arrest warrant for Mr. Outerbridge.*

On February 9, 2011, the Commonwealth filed a criminal complaint against Mr. Outerbridge charging him with the murder of Mr. Wilkins, violations of Pennsylvania's Uniform Firearms Act, and possession of an instrument of crime. Police arrested Mr. Outerbridge on February 10, 2011.

### *A state court jury convicts Mr. Outerbridge and the trial court imposes sentence.*

Mr. Marshall and Ms. Briggs testified at trial. Ms. Briggs testified she witnessed the shooting from her vantage point outside the Johnson Homes. Mr. Marshall denied knowing Mr. Wilkins and denied being present at the time of Mr. Wilkins' shooting. He denied giving a statement to police despite conceding the signature at the bottom of his police statement was his signature.[19]

Mr. Outerbridge retained a private investigator, Irving Samuel, to investigate the scene of the shooting including to take photographs. Private Investigator Samuel testified regarding the ability to see the intersection of 27th and Berks Streets from certain points at the Johnson Homes, introduced to rebut the testimony of Ms. Briggs.

After six days of trial, a jury in the Philadelphia County Court of Common Pleas convicted Mr. Outerbridge on March 18, 2013 of one count of first-degree murder, one count of violating the Uniform Firearms Act, and one count of possession of an instrument of crime.

The court sentenced Mr. Outerbridge on May 8, 2013 to a sentence of thirty-five years to a maximum of life imprisonment with the possibility of parole for the first-degree murder conviction.[20] The court sentenced Mr. Outerbridge under 18 Pa. Cons. Stat. Ann. § 1102.1, providing for sentencing of "[a] person who has been convicted after June 24, 2012, of a murder of the first degree . . . and who was under the age of 18 at the time of the commission of the offense

….."[21] If the person at the time of the commission of the offense is over fifteen-years-old, he "shall be sentenced to a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 35 years to life."[22]

### *Mr. Outerbridge's post-sentence motion.*

On May 13, 2013, Mr. Outerbridge's trial counsel, Sandjai Weaver, filed a post-sentence motion for reconsideration of the court's sentence. Attorney Weaver raised four issues: "(1) whether the evidence was sufficient to support the guilty verdicts? (2) whether the verdicts were against the weight of the evidence? (3) whether the prosecutor's actions constitute misconduct where he advised the jury in his closing that the statement by [Mr.] Hardeman could be used as substantive evidence against [Mr. Outerbridge] (4) whether the trial court erred in failing to provide a *Kloiber*[23] charge?"

The trial judge did not resolve the motion for 120 days resulting in denial of the post-sentence motion as a matter of law under Pennsylvania Rule of Criminal Procedure 720(B)(3).[24] The court advised Mr. Outerbridge of his appeal rights.

### *Mr. Outerbridge's direct appeal from the sentence.*

Mr. Outerbridge, through Attorney Weaver, filed a timely notice of appeal. He raised three issues in his direct appeal: (1) "whether evidence was insufficient to convict [Mr. Outerbridge] of Murder; [violating the Uniform Firearms Act] (§ 6108), and Possessing an Instrument of Crime where the only evidence presented at trial came from one witness who could not see the incident and the other witnesses who claims that [Mr. Outerbridge] did not commit the offense?"; (2) "whether the verdicts were against the weight of the evidence presented at trial where the evidence presented by the Commonwealth included testimony from one witness who could not see the incident and other who claimed [Mr. Outerbridge] did not commit the offense when the verdicts

shock ones [sic] sense of justice?"; and, (3) "whether the trial court abused its discretion by admitting prejudicial testimony from Tobi Downing regarding the Attorney General's Witness Relocation Program where the evidence could only establish [Ms.] Briggs had been threatened, was in fear for her life, and/or possessed knowledge regarding [Mr. Outerbridge] that in effect substantiated her basis for being afraid of [Mr. Outerbridge] and placed undue emphasis on her fear?"[25]

On the first issue, the trial court found the evidence, viewed in the light most favorable to the Commonwealth, sufficient to support a finding Mr. Outerbridge shot and killed Mr. Wilkins.[26] The trial court found the Commonwealth presented sufficient evidence to find Mr. Outerbridge guilty on all charges, citing the trial testimony and police statements read into the record of Ms. Briggs, Mr. Marshall, Mr. Hardeman, the responding officers, and the testimony of a forensic pathologist regarding Mr. Wilkins's gunshot wounds.[27] The trial court explained the jury, as fact finder, has the sole discretion to assess witness credibility at trial and is "free to believe the testimony of the witnesses presented that [Mr. Outerbridge] was carrying a firearm on a Philadelphia street and committed the shooting that resulted in [Mr.] Wilkins' death."[28] The trial court rejected Mr. Outerbridge's second and third issues challenging the weight of the evidence and the admission of the Commonwealth's relocation witness, Tobi Downing.

The Pennsylvania Superior Court affirmed the trial court.[29] On appeal, Mr. Outerbridge argued only Ms. Briggs's credibility issues and the inconsistencies between the statement Mr. Marshall gave to police and his trial testimony. The Pennsylvania Superior Court rejected Mr. Outerbridge's arguments, finding Pennsylvania law specifically recognizes an inconsistent out-of-court statement made by a witness who recants at trial is sufficient evidence to support a criminal conviction if the fact finder could, under the evidentiary circumstances of the case, reasonably

credit those statements over the trial recantations.[30] The Pennsylvania Superior Court rejected Mr. Outerbridge's credibility arguments as challenges to the weight of the evidence, not the sufficiency of the evidence; found the evidence presented at trial, if believed, sufficiently established Mr. Outerbridge as the gunman who shot Mr. Wilkins; and rejected Mr. Outerbridge's challenge to Ms. Downing's testimony.[31]

Mr. Outerbridge petitioned for allowance of appeal to the Pennsylvania Supreme Court. The Pennsylvania Supreme Court denied his petition.

### *Mr. Outerbridge seeks post-conviction collateral relief.*

On February 24, 2016, Mr. Outerbridge pro se petitioned for post-conviction relief under Pennsylvania's Post-Conviction Relief Act ("PCRA"). Mr. Outerbridge sought a new trial; an arrest of judgment and dismissal with prejudice; or re-sentencing based on *Miller v. Alabama*.[32] He raised eight grounds, some with subparts, for relief:

1. ineffective assistance of trial counsel, Attorney Weaver, for failing to request a *Kloiber* jury instruction regarding the Commonwealth's identification witnesses;

2. ineffective assistance of Attorney Weaver for failing to hire an expert witness to testify regarding the flaws in eyewitness identification;

3. ineffective assistance of Attorney Weaver for failing to request an instruction to the jury it should take Ms. Briggs's testimony with caution because she received "favorable treatment when she was relocated at the cost of $1,671.00";

4. denial of due process "when every element of the crime was not submitted to the jury" and his age at the time of the crime is a "'fact' element triggering the mandatory minimum sentence, and age as an element was not submitted to the jury before the Judge imposed the mandatory minimum sentence of 35 years to life";

5. the sentence under Pennsylvania statute 18 Pa. Cons. Stat. Ann. § 1102.1 violates the equal protection clause because it treats juveniles convicted of first-or second-degree murder under the age of fourteen differently than those fifteen-years-old and older for identical crimes, and the sentence imposed by the trial court violates the equal protection clause because it separates two classes of offenders;

6. the sentence under Pennsylvania statute § 1102.1 is an unconstitutionally cruel and unusual punishment;

7. the sentence under Pennsylvania statute § 1102.1 requiring the imposition of a mandatory minimum sentence of thirty-five years for those fifteen years of age or older violates *Miller v. Alabama*; and

8. ineffective assistance of Attorney Weaver for failing to introduce exculpatory forensic evidence, specifically blood evidence, collected from the crime scene which did not match Mr. Outerbridge.

Mr. Outerbridge argued if the PCRA court found he waived grounds four, five, six, and seven, it is a basis for an ineffective assistance of counsel claim against Attorney Weaver for failing to raise them on direct appeal.

Mr. Outerbridge filed three pro se amended PCRA petitions raising additional claims:

1. his sentence under Pennsylvania's sentencing statute § 1102.1 violates due process because it requires a defendant to serve a mandatory sentence of thirty-five years to life imprisonment and fails to comply with *Miller* and *Songster v. Beard*[33] and because it requires a mandatory minimum sentence in violation of the Eighth Amendment and due process clause;[34]

2. identical to the first amended petition;[35] and,

3. ineffective assistance of trial counsel Attorney Weaver for failing to impeach Ms. Briggs with her preliminary hearing testimony.[36]

On January 6, 2017, the PCRA court appointed attorney David Rudenstein to represent Mr. Outerbridge in the PCRA proceeding. It is unclear whether Attorney Rudenstein filed an amended PCRA petition on behalf of Mr. Outerbridge: the PCRA court's opinion noted Attorney Rudenstein filed an amended PCRA petition in which he alleged the sentencing court "failed to consider all the necessary facts as established by case law."[37] We cannot find an amended PCRA petition filed by Attorney Rudenstein in the record. Mr. Outerbridge asserts Attorney Rudenstein never filed an amended PCRA petition on his behalf.[38]

On January 16, 2018, the PCRA court provided Mr. Outerbridge and Attorney Rudenstein with a notice of its intent to dismiss the PCRA petition as without merit under Pennsylvania Rule of Criminal Procedure 907.[39] Mr. Outerbridge did not respond to the PCRA court's notice.

On April 3, 2018, the PCRA court dismissed the petition. Mr. Outerbridge, through Attorney Rudenstein, appealed the dismissal of his PCRA petition. The PCRA court issued an opinion under Rule of Appellate Procedure 1925(a) supporting the reasons for its dismissal of the petition.[40]

The PCRA court identified two issues "worthy of comment": (1) trial counsel (Attorney Weaver's) alleged ineffectiveness for failing to request a *Kloiber* charge; and (2) the constitutionality of 18 Pa. Cons. Stat. Ann. § 1102.1.[41] The PCRA court found no basis to request a *Kloiber* charge in light of Ms. Briggs's testimony and found no ineffective assistance of trial counsel for failing to request such a charge.

The PCRA court rejected Mr. Outerbridge's constitutional challenge to Pennsylvania sentencing statute § 1102.1. It noted the sentencing court did not impose a sentence of life without parole. The sentencing court instead reviewed the presentence report, mental health evaluation, and prior record score, considered the testimony of Mr. Outerbridge's mother and a counselor who visited Mr. Outerbridge twice a week since his incarceration, considered ten of Mr. Outerbridge's supporters introduced to the court, and four letters of support.[42] Based on this evidence, the sentencing court imposed the minimum sentence permitted by statute—thirty-five years. The sentencing court chose not to impose an additional three-and-a-half to seven years for violations of the Uniform Firearms Act and possession of an instrument of crime. The PCRA also found Pennsylvania's appellate courts hold the challenged sentencing statute, § 1102.1, constitutional.[43] The PCRA court dismissed Mr. Outerbridge's petition and amended petitions.

***Mr. Outerbridge appeals the dismissal of his PCRA petition to the Superior Court.***

Mr. Outerbridge, through Attorney Rudenstein, timely appealed the denial of his PCRA petition but failed to timely file a concise statement of issues for review under Pennsylvania Rule of Appellate Procedure 1925(b). The PCRA court issued a Rule 1925(a) opinion despite Mr. Outerbridge's untimely concise statement of issues for review.[44]

Mr. Outerbridge identified one issue for appellate review from the decision of the PCRA court: "Did the Honorable PCRA [c]ourt err when it dismissed the [a]mended [p]etition without granting a hearing?"[45]

The Pennsylvania Superior Court noted Mr. Outerbridge's appellate brief consisted of one argument:

> [Appellant] was sentenced to a term of thirty-five (35) years to [l]ife. Counsel did not object to the sentencing proceedings. While [Appellant] may have received a sentence as authorized by 18 Pa.C.S. § 1102.1, the proceedings still needed to have been challenged as they did not necessarily comply with the edict of *Miller* [*v. Alabama*, 132 S.Ct. 2455 (2012),] and they did not comply with the program set up by the Philadelphia Court of Common Pleas to deal with Juvenile Life issues.

> Counsel is not challenging the discretionary aspects of the sentencing but the constitutionality and fundamental fairness of the proceedings as a whole. Counsel respectfully requests that [Appellant's case] be remanded to the [s]entencing [c]ourt for a new sentencing hearing that meets all constitutional requirements.[46]

The Superior Court found Mr. Outerbridge's argument "clearly inadequate to permit our meaningful review, as it consists of only bald assertions that are not supported with any developed discussion."[47] The Superior Court also noted the sentencing court imposed the minimum sentence permitted by Pennsylvania's statute. The Superior Court affirmed the PCRA court, and "given the meager argument presented by [Mr. Outerbridge] on appeal," found no error in the denial of the PCRA petition.

Mr. Outerbridge filed a petition for allowance of appeal to the Pennsylvania Supreme Court. The Pennsylvania Supreme Court denied the petition on November 19, 2019.

### Mr. Outerbridge seeks habeas relief in this Court.

Mr. Outerbridge pro se petitioned for habeas relief under 28 U.S.C. § 2254 in this Court.[48] He raises seven claims: one challenging the sufficiency of the evidence to convict him of murder and six asserting ineffective assistance of counsel.[49]

The six ineffective assistance of counsel claims are:

1. ineffective assistance of Attorney Weaver and Attorney Rudenstein for failing to challenge the constitutionality of his sentence under *Miller v. Alabama*;

2. ineffective assistance of Attorney Rudenstein for failing to raise Attorney Weaver's ineffectiveness for failing to request a *Kloiber* jury instruction;

3. ineffective assistance of Attorney Rudenstein for failing to raise Attorney Weaver's ineffectiveness in failing to obtain expert testimony regarding flaws in eyewitness identification testimony;

4. ineffective assistance of Attorney Rudenstein for failing to raise Attorney Weaver's failure to challenge the sentence imposed under Pennsylvania statute as a violation of the equal protection clause because it treats juveniles convicted of first- or second-degree murder differently based on age;

5. ineffective assistance of Attorney Rudenstein for failing to raise in an amended PCRA petition prosecutorial misconduct in the Commonwealth's closing argument suggesting the statement to police by Mr. Hardeman could be used as evidence; and

6. ineffective assistance of Attorney Rudenstein for failing to raise Attorney Weaver's failure to request a jury instruction Ms. Briggs's testimony "may be taken with caution" because she "received favorable treatment" when the Commonwealth relocated her under its witness protection program.[50]

We referred Mr. Outerbridge's petition to the Honorable Richard A. Lloret for a Report and Recommendation. After considering the briefing, Judge Lloret issued a detailed Report and Recommendation recommending we deny the habeas petition and decline to issue a certificate of appealability.[51]

11

***Judge Lloret finds Mr. Outerbridge's claims lack merit and are procedurally defaulted.***

Judge Lloret found the state courts reasonably denied Mr. Outerbridge's claims regarding the sufficiency of the evidence raised in his PCRA appeal. Judge Lloret first found the Pennsylvania Superior Court reasonably resolved the sufficiency of the evidence claim. Judge Lloret found Mr. Outerbridge's arguments rehashed his unsuccessful arguments from his state court appeal, including challenges to eyewitness testimony and out-of-court inconsistent statements as insufficient to prove every element of murder. Judge Lloret cited the Pennsylvania Superior Court's decision reviewing the evidence presented by the Commonwealth, which the jury was free to evaluate and believe and its ultimate finding of guilt is supported by the evidence. Judge Lloret noted Mr. Outerbridge's challenges to the weight of the evidence are not cognizable on habeas review.

Judge Lloret found the six ineffective assistance of counsel claims procedurally defaulted. We agree with Judge Lloret's reasoning, and we deny and dismiss Mr. Outerbridge's habeas petition.

## II.   Analysis

Mr. Outerbridge objects to Judge Lloret's Report and Recommendation. It is difficult to determine the basis of Mr. Outerbridge's objections; his fourteen-page memorandum largely rehashes his theories of relief in his habeas petition. He again challenges the weight of the evidence, arguing the credibility of Ms. Briggs's trial testimony, Mr. Hardeman's inconsistent testimony, and challenges the credibility of other witnesses.[52]

As best we can determine, Mr. Outerbridge objects to the Report and Recommendation for these reasons:

1. A general objection to the entire Report and Recommendation as mischaracterizing "the true-factual-bases of [his] properly filed" habeas petition and failing to address the petition's "well pleaded facts and supported case law [sic]";

2. A general objection to Judge Lloret's finding the habeas claims are meritless and procedurally defaulted not excused under *Martinez v. Ryan*;[53] and

3. Judge Lloret's finding of procedural default on the ineffective assistance of trial counsel claim regarding the *Kloiber* instruction is erroneous.

### A.   Standard applied to review of objections to a report and recommendation addressing habeas petitions.

On review of a report and recommendation, we review de novo "those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[54]

### 1.   Exhaustion of state remedies and procedural default.

A federal court may not grant a habeas petition to "a person in custody pursuant to the judgment of a State court . . . unless . . . the applicant has exhausted the remedies available in the courts of the State . . . ."[55] Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."[56] "In Pennsylvania, petitioners afford the state courts that opportunity by fairly presenting their claims to the Superior Court, either on direct review or on appeal of a petition under Pennsylvania's [PCRA]."[57] "To fairly present a claim, a petitioner must introduce both the legal theory and its underlying factual support."[58] Where a petitioner fails to exhaust his claims in state court, the claims are procedurally defaulted and we may not review them.[59]

In some cases, a petitioner presents his claim to the state court but the state court concludes its review is barred by noncompliance with state procedural rules. In those cases, the doctrine of

procedural default bars federal habeas review.[60] We may not review a question of federal law decided by a state court if the decision of the state court rests on a state law "independent of the federal question and adequate to support the judgment."[61] A state procedural rule "is adequate only if it is firmly established, readily ascertainable, and regularly followed."[62]

We may review procedurally defaulted claims through a habeas petition if the petitioner can show (1) "'cause' to excuse his failure to comply with the state procedural rule and 'actual prejudice resulting from the alleged constitutional violation'";[63] or (2) the "'fundamental miscarriage of justice exception' . . . restricted 'to a severely confined category[ ] of cases in which new evidence shows 'it is more likely than not that no reasonably juror would have convicted the petitioner.'"[64]

To establish "cause," the petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."[65] "A factor is external to the defense if it 'cannot fairly be attributed to'" the petitioner.[66] To show "actual prejudice," the petitioner "must show 'not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"[67] To establish a "fundamental miscarriage of justice," petitioner must show actual innocence.[68]

Mr. Outerbridge does not claim the fundamental miscarriage of justice exception. He instead claims "cause" to excuse his procedurally defaulted claims under *Martinez v. Ryan.*[69] In *Martinez*, the Supreme Court "recognize[d] a narrow exception to the doctrine of procedural default: '[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial.'"[70] A claim of ineffectiveness of counsel may be excused under *Martinez* "[w]here, under state law, claims of

14

ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."[71] A prisoner sentenced in Pennsylvania[72] may establish "cause" for defaulting on a claim in two circumstances: (1) "where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial"; and (2) "where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984)."[73]

Under *Martinez*, the procedural default of an ineffective assistance of counsel claim may be excused for "cause" where a petitioner can show: "1) his procedurally defaulted ineffective assistance of trial counsel claim has "some merit"; and that 2) his state-post conviction counsel was "ineffective under the standards of *Strickland v. Washington*.""[74]

For a claim to be "substantial" it must have "some merit" akin to the standard for issuing a certificate of appealability.[75] "To demonstrate that his claim has some merit, a petitioner must 'show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'"[76] The "some merit" standard is less stringent than the "exacting standards" of *Strickland v. Washington*.[77] If we find *Martinez* excuses the procedural default, we may "consider the merits of a claim that otherwise would have been procedurally defaulted."[78]

## 2.    Ineffective assistance of counsel claims.

Claims of ineffective assistance of counsel are evaluated under the two-prong test of *Strickland v. Washington*.[79] "To succeed on such a claim, the petitioner must demonstrate (1) that counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and (2) that the petitioner suffered prejudice as a result of the deficiency."[80]

"To establish prejudice the petitioner 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"[81] This is a difficult standard for a petitioner to meet: "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."[82]

## B.    We overrule Mr. Outerbridge's objections.

We construe Mr. Outerbridge's objection the Report and Recommendation mischaracterizes "the true-factual-bases of [his] properly filed" habeas petition and failing to address the petition's "well pleaded facts and supported case law [sic]" as disagreeing with Judge Lloret's finding on the sufficiency of the evidence claim.  We construe Mr. Outerbridge's second and third objections as a challenge to Judge Lloret's finding the ineffective assistance of counsel claims are procedurally defaulted and not exhausted under *Martinez v. Ryan*.

1.      **We overrule the objections relating to the weight and sufficiency of evidence claim.**

Mr. Outerbridge objects to the entire Report and Recommendation as mischaracterizing the "true-factual-bases" of his habeas petition and fails to address his "well pleaded facts," again arguing what he believes is the "inconsistent testimony" of Ms. Briggs, Mr. Hardeman, and Mr. Marshall, the credibility their testimony as compared to his trial witness, Private Investigator Samuel, and perceived deficiencies in the Commonwealth's evidence.

We apply the standard provided by Congress.[83], "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[84] "On federal habeas review, [Congress] 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'"[85]

Mr. Outerbridge claims he is entitled to habeas relief by challenging the sufficiency of the evidence supporting his state court murder conviction. The clearly established federal law governing the insufficient evidence claim is the standard set out by the Supreme Court in *Jackson v. Virginia*.[86] Under *Jackson*, "'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"[87] "This reasonable doubt standard of proof requires the finder of fact 'to reach a subjective state of *near certitude* of the guilt of the accused.'"[88] "A conviction that fails to satisfy the *Jackson* standard violates due process, . . . and

thus a convicted habeas petitioner is entitled to relief if the state court's adjudication denying the insufficient evidence claim was objectively unreasonable . . ."[89]

Mr. Outerbridge challenges the sufficiency of the evidence to support his state court murder conviction as well as the weight of the evidence. He challenges the weight of the evidence, specifically to the credibility of Ms. Briggs's testimony generally and in contrast to the testimony of Private Investigator Samuel, the testimony of Mr. Hardeman, and the recanted testimony of Mr. Marshall. This challenge is not a basis for habeas review.[90] As a federal habeas court, we may not "redetermine credibility of witnesses whose demeanor has been observed by the state trial court …."[91] Mr. Outerbridge's objection to the Report and Recommendation's "mischaracterization" of the "true-factual-bases" of his habeas petition boils down to a disagreement with Judge Lloret's review of the state courts' decision reviewing the sufficiency of the evidence. We overrule Mr. Outerbridge's objections to the extent he objects to the weight of the evidence.

We turn next to the sufficiency of the evidence challenge. Applying the standard under *Jackson v. Virginia*, we view the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The Pennsylvania Superior Court applied the proper standard by "review[ing] the evidence in the light most favorable to the verdict winner to determine whether there is sufficient evidence to allow the jury to find every element of a crime beyond a reasonable doubt."[92] The Superior Court summarized the testimony at trial: Ms. Briggs's statement to police and testimony at trial identifying Mr. Outerbridge by his nickname, Quill, she saw Mr. Outerbridge in the area around ten to twenty minutes before the shooting, she heard gunshots while outside hanging clothes, she heard six to seven gunshots and saw Mr. Outerbridge shooting;[93] and Mr. Marshall's statement to police read into the record, which he later recanted at trial, as being  with

Mr. Wilkins and Mr. Hardeman at the time of the shooting, and he told homicide detectives he saw "a chubby boy in a blue hat from around the corner and he just started shootin[g] [Mr. Wilkins]," identifying Mr. Outerbridge as Quill, and identifying him in a photo array.[94]

The Superior Court rejected Mr. Outerbridge's argument Mr. Marshall recanted at trial the statement he gave to police on August 4 and identification of Mr. Outerbridge from a photo array on August 28. The Superior Court explained Pennsylvania law recognizes an inconsistent out-of-court statement made by a witness who recants while testifying at trial is "sufficient evidence upon which a criminal conviction may properly rest if the finder-of-fact could, under the evidentiary circumstances of the case, reasonably credit those statements over the witness's in-court recantations."[95] The Superior Court explained Mr. Outerbridge's challenges to the credibility and believability of the testimony go to the weight and not the sufficiency of the evidence.

The Superior Court, applying the correct standard, concluded the evidence is sufficient to support a conviction when, viewed in the light most favorable to the Commonwealth, the evidence provides a basis for the jury to find every element of a crime beyond a reasonable doubt.[96] We overrule Mr. Outerbridge's objection to the sufficiency of the evidence or, as he puts it, the "true-factual bases" and "well pleaded facts" of his habeas petition.

### 2. We overrule objections based on a finding of procedural default of the ineffective assistance of counsel claims.

Mr. Outerbridge objects generally to Judge Lloret's finding all six ineffective assistance of counsel claims are procedurally defaulted and not excused under *Martinez*. Mr. Outerbridge specifically objects to the procedural default of his ineffective assistance of trial counsel claim regarding a *Kloiber* instruction.

### *The constitutionality of the sentence is procedurally defaulted and not excused by <u>Martinez</u>.*

Mr. Outerbridge contends the sentencing court failed to impose the individualized sentence required by *Miller v. Alabama* and claims ineffective assistance of trial counsel (Attorney Weaver) for failing to object at sentencing. He alternatively argues ineffective assistance of PCRA counsel Attorney Rudenstein for failing to raise this issue in an amended PCRA petition.

In *Miller*, the Supreme Court held unconstitutional mandatory life sentences without parole for juvenile offenders.[97] Before sentencing a juvenile to life imprisonment without the possibility of parole, a court must consider the juvenile offender's chronological age, immaturity, impetuosity, and failure to appreciate risks and consequences, family and home environment, the circumstances of the homicide offense, the extent of the juvenile's participation in the conduct and the way familial and peer pressures may have affected him, his ability to deal with police and prosecutors, incapacity to assist his own attorneys, and possibility of rehabilitation.[98]

Mr. Outerbridge styled his objection to the constitutionality of his sentence as one of ineffective assistance of trial and PCRA counsel. Judge Lloret found this claim procedurally defaulted. Judge Lloret explained the Superior Court denied Mr. Outerbridge's appeal from the PCRA court's decision after finding his briefing of the issue is "clearly inadequate to permit our meaningful review, as it consists of only bald assertions that are not supported with any developed discussion."[99] Pennsylvania Rules of Appellate Procedure require Mr. Outerbridge to support his argument "with pertinent discussion and citation to authority."[100] Undeveloped claims "are waived and unreviewable on appeal."[101] Judge Lloret found the Superior Court applied an independent and adequate state procedural rule barring Mr. Outerbridge's ineffective assistance of counsel claim on the constitutionality of his sentence and is procedurally defaulted.

Mr. Outerbridge objects to Judge Lloret's finding the procedural default is not excused under *Martinez*. A procedural default may be excused for cause if Mr. Outerbridge can show his procedurally defaulted ineffective assistance of trial counsel claim has "some merit" and his PCRA counsel was ineffective under *Strickland v. Washington*. Judge Lloret found *Martinez* does not apply because Mr. Outerbridge raised ineffective assistance of counsel claims regarding the constitutionality of his sentence under *Miller* in his February 2016 PCRA petition. The PCRA court found this claim meritless because the sentencing court did not impose a life sentence without parole and thus not required to make the findings required by Pennsylvania statute § 1102.1(d) and *Miller*.[102] Judge Lloret explained the procedural default occurred when Mr. Outerbridge failed to adequately present this claim to the Pennsylvania Superior Court.

We agree with Judge Lloret. There is no merit to Mr. Outerbridge's petition on the constitutionality of his sentence under *Miller*. *Miller* does not apply here. The sentencing court did not impose a mandatory life sentence without parole; it imposed a minimum term of thirty-five years to life with the possibility of parole. Mr. Outerbridge's claim is procedurally defaulted and not excused by *Martinez*.

### Ineffective assistance of counsel as to a <u>Kloiber</u> instruction is procedurally defaulted and not excused by <u>Martinez</u>.

Mr. Outerbridge next argues ineffective assistance of counsel claims in failing to request a *Kloiber* instruction and ineffective assistance of PCRA counsel for failing to raise the issue in the PCRA action relating to the testimony of Ms. Briggs, Mr. Hardeman, and Mr. Marshall. Mr. Outerbridge objects to Judge Lloret's finding the claims procedurally defaulted and not excused by *Martinez*.

Under the Pennsylvania Supreme Court's decision in *Commonwealth v. Kloiber*, a jury must be instructed "where the witness is not in a position to clearly observe the assailant, or he is

not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more occasions, the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution."[103] "A *Kloiber* charge is appropriate when the accuracy of the testimony of an eyewitness' identification is 'so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution.'"[104] A trial court must give a *Kloiber* instruction where an eyewitness: "(1) did not have an opportunity to clearly view the defendant; (2) equivocated on the identification of the defendant; or (3) had a problem making an identification in the past."[105] "A *Kloiber* charge is not mandatory '[w]here an eyewitness has had 'protracted and unobstructed views' of the defendant and consistently identified the defendant 'throughout the investigation and at trial.'"[106] A *Kloiber* charge does not apply where a witness earlier positively identifies a defendant but later refuses to provide an in-court identification.[107]

Examining the testimony of each witness, Judge Lloret first found the *Kloiber* claim with regard to Ms. Briggs's testimony procedurally defaulted and not excused by *Martinez*. In his February 2016 PCRA petition, Mr. Outerbridge raised an ineffective assistance of trial counsel claim for failing to request a *Kloiber* charge as to Ms. Briggs's testimony. The PCRA court considered this claim and concluded there is no basis to request a *Kloiber* charge.[108] Ms. Briggs testified on the day of the shooting, she knew Mr. Outerbridge from the neighborhood; knew him as Quill; saw Mr. Outerbridge, and no one else, shooting; saw Mr. Outerbridge running with a gun about ten to fifteen minutes before the shooting; heard six or seven gunshots; saw Mr. Wilkins running behind Mr. Outerbridge; and witnessed the shooting from about forty feet away during daylight.[109] The PRCA court found trial counsel was not ineffective for failing to request a *Kloiber* charge.

Mr. Outerbridge then failed to raise this claim to the Superior Court in his PCRA appeal. Judge Lloret concluded the claim is procedurally defaulted. Because the procedural default occurred on PCRA appeal and **_not_** at the initial PCRA proceeding, *Martinez* does not apply. In other words, the procedural default was **_not_** caused by the ineffective assistance or absence of counsel at the initial PCRA proceeding which *Martinez* would remedy. We agree with Judge Lloret and overrule Mr. Outerbridge's objection with regard to an ineffective assistance of counsel for failing to request a *Kloiber* charge on Ms. Briggs's testimony.

Mr. Outerbridge similarly claims ineffective assistance of trial counsel for failing to request a *Kloiber* charge for the testimony of Mr. Hardeman and Mr. Marshall. Judge Lloret found Mr. Outerbridge did not raise these claims in his PCRA action and consequently, not presented to the Superior Court on appeal. Judge Lloret found these claims procedurally defaulted and because the claims do not have "some merit" under the first step of *Martinez*, the default is not excused.

In his PCRA action, Mr. Outerbridge alleged ineffective assistance of trial counsel for failing to request a *Kloiber* instruction for the Commonwealth's identification witnesses.[110] His brief focuses only the *Kloiber* instruction regarding Ms. Briggs.[111] Even if Mr. Outerbridge raised this claim as to Mr. Hardeman's and Mr. Marshall's testimony in the PCRA action, they are procedurally defaulted because he did not present it to the Superior Court in the PCRA appeal and are not excused under *Martinez*.

Mr. Hardeman testified at trial he was near the scene of the shooting but did not see the person who shot Mr. Wilkins. The Commonwealth introduced Mr. Hardeman's statement made to police describing his presence at the scene of the shooting, hearing gunshots, seeing someone shooting Mr. Wilkins described as about seventeen or eighteen years old, taller than five feet, seven

inches, "a little chubby," and wearing a white t-shirt with a black or blue baseball cap.[112] A few weeks later, Mr. Hardeman identified Mr. Outerbridge from a police photo array.

Mr. Marshall gave a statement to police identifying Mr. Outerbridge as the shooter, including a description of a "chubby boy in a blue hat from around the corner." Mr. Marshall identified Mr. Outerbridge as the shooter in a photo array and told police he knew Mr. Outerbridge as his friend's brother and who he had seen over the summer.[113] At trial, he recanted his statement, denied being present at the scene of the shooting, asserted the police statement contained lies, he gave the statement after police beat him up, and was high at the time he gave the statement.[114]

Mr. Outerbridge today argues Mr. Hardeman's testimony and an alleged obstruction of his sight line by bushes in the full bloom of summer required a *Kloiber* instruction, making his trial counsel ineffective for failing to request such a charge. Mr. Outerbridge argues Mr. Marshall's inconsistent statements required a *Kloiber* instruction.

Judge Lloret found Mr. Outerbridge's claims do not have "some merit" under the first prong of *Martinez*.[115] Judge Lloret explained Mr. Hardeman's statement to police demonstrated he observed the shooting from his vantage point and there is no citation to record evidence to support Mr. Outerbridge's assertion Mr. Hardeman's view would have been blocked by bushes. Judge Lloret correctly cited case law a *Kloiber* instruction is not warranted where circumstances indicated the trustworthiness of Mr. Hardeman's earlier identification when he declined to identify Mr. Outerbridge at trial. For the same reasons, Judge Lloret found Mr. Marshall's prior inconsistent statement does not require a *Kloiber* instruction, citing case law *Kloiber* instructions are not required when a witness gives a previous positive identification but refuses to provide identification at trial.[116]

Judge Lloret correctly determined Mr. Outerbridge's *Kloiber* claims are procedurally defaulted and not excused by *Martinez*. We overrule Mr. Outerbridge's objections.

### Ineffective assistance of counsel claim regarding potential expert testimony is procedurally defaulted.

Mr. Outerbridge next claims ineffective assistance of trial counsel for failing to call an expert witness regarding the inherent flaws of eyewitness testimony and ineffective assistance of PCRA counsel for failing to raise the claim in an amended PCRA petition.

A review of Mr. Outerbridge's February 2016 pro se PCRA petition reveals he raised this claim in his PCRA petition.[117] The PCRA court did not address this claim.[118] Mr. Outerbridge did not raise this claim in his appeal from the PCRA court to the Superior Court and it is not exhausted.

Even if exhausted, we agree with Judge Lloret this claim is procedurally defaulted and not excused by *Martinez* because the claim does not have "some merit." Under Pennsylvania law, Mr. Outerbridge "must articulate what evidence was available and identify the witness who was willing to offer such evidence" when challenging trial counsel's failure to secure expert testimony.[119] He "must also show … prejudice by the absence of testimony by demonstrating how the uncalled expert would have been helpful to his defense under the circumstances of the case."[120]

Mr. Outerbridge does not identify the available evidence, the expert willing to offer such evidence, and prejudice by the absence of testimony. He argues a hypothetical expert could have "provide[d] guidance to the jury concerning the flaws in eyewitness testimony" and it is reasonably probable "at least one jury [sic] would have paused or hesitated and thus would have had a reasonable doubt as to [his] guilt." He does not provide support to this bald assertion; he does not name the expert that should have been called or describe proposed testimony.[121]

Even if Mr. Outerbridge met his burden to identify an expert and describe proposed testimony, Pennsylvania law at the time of his trial prohibited expert testimony on the reliability

25

of eyewitness identification. At the time of trial in 2013, the Pennsylvania Supreme Court precluded eyewitness testimony on the reliability of eyewitness identification because "[s]uch testimony would [give] and unwarranted appearance of authority as the subject of credibility, a subject which an ordinary juror can assess."[122] In 2014, the Pennsylvania Supreme Court rejected the per se exclusionary rule to the admission of expert testimony regarding eyewitness identification.[123] The Pennsylvania Supreme Court's 2014 decision in *Walker* announced a new rule allowing the admission of expert testimony on relevant factors regarding eyewitness identification at the discretion of the trial court.[124]

Neither trial counsel nor PCRA counsel can be ineffective on the eyewitness identification expert issue if such an expert could not have been called under Pennsylvania law at the time of Mr. Outerbridge's 2013 trial. There is no merit to Mr. Outerbridge's claim. He fails to meet the first step of *Martinez*. We overrule Mr. Outerbridge's objection as to this claim.

### *The Equal Protection claim is procedurally defaulted.*

Mr. Outerbridge claims ineffective assistance of counsel for failing to object to his sentence under the Equal Protection Clause and ineffective assistance of PCRA counsel for failing to raise the claim in an amended PCRA petition. Mr. Outerbridge raised this claim in his February 2016 PCRA petition.[125] The PCRA court did not address the Equal Protection argument.[126] Mr. Outerbridge did not raise this issue in his PCRA appeal.

Mr. Outerbridge again challenges the constitutionality of Pennsylvania's sentencing statute for juvenile offenders convicted of first-degree murder, 18 Pa. Cons. Stat. Ann. § 1102.1, this time under the Equal Protection Clause. The Pennsylvania General Assembly mandates under section 1102.1 enacted after the Supreme Court's decision in *Miller v. Alabama*, a person who is fifteen years of age or older at the time of the commission of the offense "shall be sentenced to a term of

life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 35 years to life." A person who is under the age of fifteen at the time of the commission of the offense "shall be sentenced to a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 25 years to life."[127]

Mr. Outerbridge, sixteen-years-old at the time of the 2010 shooting, received a minimum sentence of thirty-five years to life for those over the age of fifteen. He argues section 1102.1 treats similarly situated juvenile offenders under age fifteen differently because the minimum sentence for those younger offenders is twenty-five years and thus violates the Equal Protection Clause of the Fourteenth Amendment. He argues *Miller v. Alabama* treats all juvenile offenders under the age of eighteen equally, and Pennsylvania's statute violates his equal protection rights. He argues sentencing counsel (Attorney Weaver) failed to raise this objection at sentencing and Attorney Rudenstein failed to raise this claim in an amended PCRA petition. He makes this argument despite the fact he raised an equal protection challenge to the Pennsylvania statute in his February 2016 pro se PCRA petition. Mr. Outerbridge did not raise an equal protection claim in his PCRA appeal to the Superior Court, failed to exhaust the claim, and is procedurally defaulted.

Even if not procedurally defaulted, the claim is not excused by *Martinez* because it has no merit. To prevail on an equal protection claim, Mr. Outerbridge must show the "Government has treated [him] differently from a *similarly* situated party *and* that the Government's explanation for the differing treatment does *not* satisfy the relevant level of scrutiny."[128] Classifications based on "fundamental personal rights" or "suspect distinctions such as race, religion, or alienage" are subject to heightened scrutiny while classifications involving neither fundamental rights nor "proceeding along suspect lines" are subject to the more deferential rational-basis review.[129]

27

Rational-basis review is "extremely low" and asks "whether there is 'a rational relationship between the disparity of treatment and some legitimate governmental purpose.'"[130] Rational-basis review "confers a presumption of validity on legislation" which the challenger must rebut and "negate every conceivable justification for the classification in order to prove that the classification is wholly irrational."[131]

Age is not a suspect classification under the Equal Protection Clause.[132] We apply a rational-basis review to Pennsylvania's statute which is presumptively valid. Although Mr. Miller relies on *Miller v. Alabama* as making "no distinction" between juvenile offenders under the age of eighteen, *Miller* does not support his argument. *Miller* precludes mandatory life without parole for juvenile offenders without considering chronological age and "its hallmark features." We agree with Judge Lloret's conclusion Mr. Outerbridge's equal protection claim is meritless because he failed to meet his burden of showing Pennsylvania's sentencing statute, section 1102.1, does not pass rational-basis scrutiny. His claim fails to meet the first step of *Martinez* and we overrule this objection.

### The prosecutorial misconduct claim is procedurally defaulted.

Mr. Outerbridge claims ineffective assistance of PCRA counsel for failing to raise prosecutorial misconduct in an amended PCRA petition. Mr. Outerbridge attributes misconduct to the Assistant District Attorney when he told the jury in his closing Mr. Hardeman's testimony could be used as "substantive evidence," depriving Mr. Outerbridge of due process.

We agree with Judge Lloret this claim is procedurally defaulted and not excused under *Martinez*. In its closing argument, the Commonwealth referred to the inconsistent testimony of both Mr. Marshall and Mr. Hardeman.[133] The Commonwealth told the jury it can consider prior inconsistent statements and "you can accept what they said in the earlier statement as evidence, as

evidence of actually what really happened." Mr. Outerbridge claims this is prosecutorial misconduct.

There is no merit to this claim. As Judge Lloret explained, Pennsylvania law allows prior inconsistent statements to be used as substantive evidence if a witness is available for cross examination at trial[134] and the United States Supreme Court considers the admission of prior inconsistent statements a matter of evidentiary law, not constitutional law.[135] Mr. Hardeman and Mr. Marshall made statements to police inconsistent with their trial testimony where they were cross-examined. Trial counsel is not ineffective for failing to object to the Commonwealth's reference to their prior inconsistent statements in its closing. We overrule Mr. Outerbridge's objection.

### *The claim regarding a jury instruction about Ms. Briggs's alleged "favorable treatment" is procedurally defaulted.*

Mr. Outerbridge's last claim asserts ineffectiveness of trial counsel for failing to request a jury instruction regarding the Commonwealth's "favorable treatment" with regard to Ms. Briggs. He claims ineffectiveness of PCRA counsel for failing to raise this claim in an amended PCRA petition.

Mr. Outerbridge contends the Commonwealth provided Ms. Briggs with $1,671 in relocation expenses after she feared retaliation for her cooperation with police in this case. He argues this relocation expense constitutes "favorable treatment" by the Commonwealth and trial counsel should have demanded a jury instruction on Ms. Briggs's possible bias.

Mr. Outerbridge did not raise this claim in his pro se PCRA petitions making it unexhausted and procedurally defaulted. He argues this claim is excused under *Martinez*. We agree with Judge Lloret the claim is without merit and fails to meet the first step of *Martinez*.

Mr. Outerbridge did not cite, and Judge Lloret could not find, authority supporting the argument a relocation expense amounts to favorable treatment entitling a defendant to a corrupt-source jury instruction. Under Pennsylvania law, a "corrupt-source" instruction is appropriate where a witness is an accomplice with the defendant. In that case, if an accomplice implicates the defendant, the trial court should instruct the jury the accomplice is a corrupt and polluted source whose testimony should be considered with caution. We agree with Judge Lloret there is no basis for a corrupt-source instruction.

We agree with Judge Lloret's finding Ms. Downing, from the District Attorney's Witness Relocation Program, testified at trial as to Ms. Briggs's relocation and the Commonwealth introduced into evidence documents reviewing the assistance Ms. Briggs received before trial. Judge Lloret found the jury knew of the Commonwealth's efforts to relocate Ms. Briggs and the assistance she received and was free to consider this evidence in assessing Ms. Briggs's credibility. The trial court's charge to the jury included an instruction regarding a witness's bias or prejudice which may color his or her testimony.[136]

We agree with Judge Lloret's conclusion this claim lacks merit and fails to meet the first step of *Martinez*. We overrule Mr. Outerbridge's objection.

### C.  We deny a certificate of appealability.

"[A] state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition."[137] Section 2253 provides the standard for a certificate of appealability required for appellate review of a district court's judgment denying habeas relief:

(a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

(b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person

charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

    (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

    (B) the final order in a proceeding under section 2255.

  (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

  (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).[138]

A certificate of appealability "will issue only if the requirements of § 2253 have been satisfied."[139] A habeas petitioner seeking a certificate of appealability "need only demonstrate 'a substantial showing of the denial of a constitutional right.'"[140] A petitioner "satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."[141]

Federal Rule of Appellate Procedure 22 contemplates a district court issuing a certificate of appealability in the first instance: "(b) Certificate of Appealability. (1) In a habeas corpus proceeding in which the detention complained of arises from process issued by a state court, or in a 28 U.S.C. § 2255 proceeding, the applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c). If an applicant files a notice of appeal, the district clerk must send to the court of appeals the certificate (if any) and the statement described in Rule 11(a) of the Rules Governing Proceedings Under 28 U.S.C. § 2254 or § 2255 (if any), along with the notice of appeal and the file of the district-court

proceedings. If the district judge has denied the certificate, the applicant may request a circuit judge to issue it."[142]

Given the standard we apply today to habeas challenges to state trial court evidentiary rulings and ineffectiveness of counsel, we cannot find jurists of reason could disagree with our reasoning in denying the petition.

## III.    Conclusion

We overrule Mr. Outerbridge's objections and find his claims for habeas relief lack merit. We adopt Judge Lloret's Report and Recommendation. We deny and dismiss Mr. Outerbridge's Petition for a writ of habeas corpus. We deny a certificate of appealability.

---

[1] *Commonwealth v. Outerbridge*, No. CP-51-CR-00065882011, 2014 WL 8104237, at *1 (Phila. Ct. Common Pleas May 23, 2014) ("*Outerbridge I*").

[2] *Id.*

[3] *Id.*

[4] *Id.* at * 2.

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] Notes of Testimony ("N.T."), March 13, 2013 at 22–41.

[9] N.T. March 13, 2013 at 30.

[10] N.T. March 13, 2013 at 34–35.

[11] N.T. March 13, 2013 at 64, 72–73.

[12] N.T. March 13, 2013 at 136–153.

[13] N.T. March 13, 2013 at 140.

[14] N.T. March 13, 2013 at 141.

[15] N.T. March 12, 2013 at 117–123. The Philadelphia District Attorney's Office assisted in relocating Ms. Briggs before she made a statement to police as part of the Attorney General's Witness Relocation Program. Tobi Downing, a Victim/Witness Coordinator in the Victim Services Unit testified at trial as to Ms. Briggs's involvement in the program. Ms. Downing testified regarding the relocation process and the amount of financial assistance provided to Ms. Briggs as part of the relocation program. N.T. March 14, 2013 at 5–9.

[16] N.T. March 12, 2013 at 121–122.

[17] N.T. March 12, 2013 at 104.

[18] N.T. March 12, 2013 at 106–112.

[19] N.T. March 13, 2013 at 149–151.

[20] The court did not impose a sentence on the other convictions.

[21] On June 25, 2012, the United States Supreme Court held mandatory life sentences without parole for juvenile offenses is unconstitutional. *Miller v. Alabama*, 567 U.S. 460 (2012). The Pennsylvania General Assembly passed 18 Pa. Cons. Stat. Ann. § 1102.1. The court sentenced Mr. Outerbridge on May 8, 2013.

[22] 18 Pa. Cons. Stat. Ann. § 1102.1(a)(1).

[23] *Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954). As further described in our analysis, the Pennsylvania Supreme Court in *Kloiber* held a jury must be instructed "where the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more occasions, the accuracy of the identification is so doubtful … the testimony as to identity must be received with caution." *Id.* at 826–27.

[24] Under Pa. R. Crim. P. 720(B)(3)(a), a post-sentence motion is deemed denied by operation of law if a judge fails to decide a post-sentence motion within 120 days.

[25] *Outerbridge I*, 2014 WL 8104237 at *1. *Outerbridge I* is the trial court's opinion under Pennsylvania Rule of Appellate Procedure 1925(a).

[26] *Id.* at * 2.

[27] *Id.* at *3-*4.

[28] *Id.* at *4.

[29] *Commonwealth v. Outerbridge*, No. 3170 EDA 2013, 2015 WL 6180886 (Pa. Super. Ct. Feb. 24, 2015) ("*Outerbridge II*").

[30] *Id.* at *2.

[31] *Id.* at *2-*3.

[32] 567 U.S. 460 (2012).

[33] 201 F. Supp. 3d 639 (E.D. Pa. 2016).

[34] ECF Doc. No. 23 at 31–36 (using the pagination assigned by the CM/ECF docketing system).

[35] *Compare* ECF Doc. No. 23 at 31–36 *with* ECF Doc. No. 23 at 38–43.

[36] ECF Doc. No. 23 at 47–51.

[37] *Commonwealth v. Outerbridge*, CP 51-CR-0006588-2011 at 2 (Phila. Ct. Common Pleas June 11, 2018) ("*Outerbridge III*").

[38] ECF Doc. No. 23 at 6.

[39] Rule 907(a) provides a PCRA judge "shall promptly review the petition, any answer by the attorney for the Commonwealth, and other matters of record relating to the defendant's claim(s). If the judge is satisfied from this review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, the judge shall give notice to the parties of the intention to dismiss the petition and shall state in the notice the reasons for the dismissal. The defendant may respond to the proposed dismissal within 20 days of the date of the notice. The judge thereafter shall order the petition dismissed, grant leave to file an amended petition, or direct that the proceedings continue."

[40] *Outerbridge III*.

[41] *Outerbridge III* at 2.

[42] *Id.* at 4.

[43] *Id.* at 7 (citing *Commonwealth v. Lawrence*, 99 A.3d 116 (Pa. Super. Ct. 2014), *appeal den.*, 114 A.3d 416 (Pa. 2015).

[44] *See Outerbridge III*.

[45] *Commonwealth v. Outerbridge*, No. 1274 EDA 2018, 2019 WL 145 50388 (Pa. Super. Ct. April 1, 2019) ("*Outerbridge IV*").

---

[46] *Id.* at *2.

[47] *Id.*

[48] ECF Doc. No. 1. One ground for relief is listed twice—Grounds Four and Five are identical.

[49] ECF Doc. No. 4.

[50] ECF Doc. No. 4.

[51] ECF Doc. No. 19.

[52] *See* ECF Doc. No. 23 at 6–15 (using the pagination assigned by the CM/ECF docketing system).

[53] 566 U.S. 1 (2012).

[54] 28 U.S.C. § 636(b)(1)(B).

[55] 28 U.S.C. § 2254(b)(1)(A).

[56] *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

[57] *Rodland v. Superintendent of SCI Houtzdale*, No. 18-1892, 2020 WL 7385089, at *2 (3d Cir. Dec. 16, 2020) (citing *Lambert v. Blackwell*, 387 F.3d 210, 232–34 (3d Cir. 2004)).

[58] *Id.* (citing *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)); *see also Nara v. Frank*, 488 F.3d 187, 197–98 (3d Cir. 2007) (citing *Duncan v. Henry*, 513 U.S. 364, 366 (1995) (per curiam)) ("A petitioner has fairly presented his claim if he presented the same factual and legal basis for the claim to the state courts.").

[59] *O'Sullivan*, 526 U.S. at 848. *See Greene v. Superintendent Smithfield SCI*, 882 F.3d 443, 449 (3d Cir. 2018) ("[A] federal court may not review federal claims that were procedurally defaulted in state court . . ." (alterations in original) (quoting *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017)).

[60] *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991).

[61] *Id.* at 729.

[62] *Szuchon v. Lehman*, 273 F.3d 299, 325 (3d Cir. 2001) (citing *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991); *Harris v. Reed*, 489 U.S. 255, 262 (1989)).

[63] *Greene*, 882 F.3d at 449 (quoting *Davila*, 137 S. Ct. at 2064–65).

[64] *Id.* at 449 n.8 (second alteration in original) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013)).

---

[65] *Davila*, 137 S. Ct. at 2065 (internal quotation marks omitted) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

[66] *Id.* (quoting *Coleman v. Thompson,* 501 U.S. 722, 753 (1991)).

[67] *Murray*, 477 U.S. at 494 (alteration in original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

[68] *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

[69] 566 U.S. 1 (2012).

[70] *Workman v. Superintendent Albion SCI*, 915 F.3d 928, 937 (3d Cir. 2019) (quoting *Martinez*, 566 U.S. at 9).

[71] *Martinez*, 566 U.S. at 17.

[72] "[M]*artinez* applies if state law, 'either expressly or as a matter of practicality,' bars prisoners from raising [ineffective assistance of trial counsel] claims on direct appeal. . … Pennsylvania state law requires prisoners to raise [ineffective assistance of trial counsel] claims on PCRA review, rather than on direct review." *Preston v. Superintendent Graterford SCI*, 902 F.3d 365, 376 n.12 (3d Cir. 2018) (quoting *Cox v. Horn*, 757 F.3d 113, 124 n.8 (3d Cir. 2014)).

[73] *Martinez*, 566 U.S. at 14.

[74] *Workman*, 915 F.3d at 937 (citing *Martinez*, 566 U.S. at 14).

[75] *Workman*, 915 F.3d at 937–38.

[76] *Id.* at 938 (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)).

[77] *Id.*

[78] *Id.* (quoting *Martinez*, 566 U.S. at 17).

[79] 466 U.S. 668 (1984).

[80] *Blystone v. Horn*, 664 F.3d 397, 418 (3d Cir. 2011) (citing *Strickland*, 466 U.S. at 687).

[81] *Id.* (quoting *Strickland*, 466 U.S. at 694).

[82] *Id.* at 419 (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)).

[83] *See* 28 U.S.C. §§ 2241–2254.

[84] 28 U.S.C. § 2254(d).

[85] *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)).

[86] 443 U.S. 307 (1979).

[87] *Travillion v. Superintendent Rockview SCI*, 982 F.3d 896, 902 (3d Cir. 2020) (citation omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

[88] *Id.* (quoting *Jackson*, 443 U.S. at 315).

[89] *Id.* (citations omitted) (first citing *Jackson,* 443 U.S. at 319; then citing *Parker v. Matthews*, 567 U.S. 37, 43 (2012)).

[90] *Benson v. Overmyer*, No. 18-4135, 2020 WL 5017356, at *2 (E.D.Pa. Aug. 25, 2020) (citing *Tibbs v. Florida*, 457 U.S. 31, 37–38 (1982)).

[91] *Marshall v. Lonberger*, 459 U.S. 422, 434 (U.S. 1983).

[92] *Outerbridge II*, 2015 WL 6180886, at * 1 (citing *Commonwealth v. Tejada*, 107 A.2d 788, 792 (Pa. Super. Ct. 2015)).

[93] N.T. March 12, 2013 at 100–112.

[94] N.T. March 13, 2012 at 122-144.

[95] *Outerbridge II*, 2015 WL 6180886, at * 2 (quoting *Commonwealth v. Brown*, 52 A.3d 1139, 1168 (Pa. 2012)).

[96] *Id.* at *3.

[97] *Miller*, 567 U.S. at 479.

[98] *Id.* at 477–78.

[99] *Outerbridge IV*, 2019 WL 1450388 at *2.

[100] *Commonwealth v. Wholaver*, 177 A.3d 136, 160 (Pa. 2018) (citing Pa. R. App. P. 2119(a)).

[101] *Commonwealth v. Clayton*, 816 A.2d 217, 402–03 (Pa. 2002) (citing *Commonwealth v. Williams*, 782 A.2d 517, 532 (Pa. 2001)).

[102] *See Outerbridge III* at 4.

[103] *Commonwealth v. Kloiber*, 106 A.2d 820, 826–27 (Pa. 1954).

[104] *Commonwealth v. Brown*, 196 A.3d 130, 163 (Pa. 2018) (quoting *Kloiber*, 106 A.2d at 826-27).

[105] *Id.* (quoting *Commonwealth v. Ali*, 10 A.3d 282, 303 (Pa. 2010)).

[106] *Id.* (quoting *Commonwealth v. Dennis*, 715 A.2d 404, 411 (Pa. 1998)).

[107] *Holden v. Delbase*, No. 18-68, 2019 WL 251854, at *6 (E.D. Pa. Jan. 16, 2019) (citing *Commonwealth v. Sanders*, 42 A.3d 325, 334–35 (Pa. Super. Ct. 2012)).

[108] *Outerbridge III* at 6.

[109] *Id.* (citing N.T. March 12, 2013 at 102–11).

[110] *See* ECF Doc. No. 23 at 17, ¶ 10.a (using the pagination supplied by the CM/ECF docketing system).

[111] ECF Doc. No. 23 at 65 (using the pagination supplied by the CM/ECF docketing system).

[112] N.T. March 13, 2013 at 17–35.

[113] N.T. March 13, 2013 at 130–141.

[114] N.T. March 13, 2013 at 123–154.

[115] Mr. Outerbridge argues Judge Lloret erred in finding *Martinez* does not excuse his procedurally defaulted ineffective assistance of counsel claim on the *Kloiber* instruction, citing *Mack v. Superintendent Mahanoy SCI*, 714 F. App'x 151 (3d Cir. 2017). *Mack* is inapplicable here. In *Mack*, our Court of Appeals vacated the District Court's order dismissing Mr. Mack's habeas petition and remanded it with instructions to conduct a *Martinez* analysis because neither the Magistrate Judge nor the District Court did so. Judge Lloret properly applied *Martinez* to each of Mr. Outerbridge's ineffective assistance claims.

[116] *See Holden*, 2019 WL 251854 at *5–*6.

[117] ECF Doc. No. 23 at 18, ¶ 10.b (using the pagination supplied by the CM/ECF docketing system).

[118] *See Outerbridge III*.

[119] *Commonwealth v. Luster*, 71 A.3d 1029, 1047 (Pa. Super. Ct. 2013) (quoting *Commonwealth v. Bryant*, 855 A.2d 726, 745 (Pa. 2004)).

[120] *Commonwealth v. Cuenas*, No. 1500 EDA 2020, 2021 WL 2287501, at *5 (Pa. Super. Ct. May 28, 2021) (citing *Commonwealth v. Williams*, 141 A.3d 440, 460 (Pa. 2016)).

[121] *See Williams v. Wenerowics*, No. 13-3908, 2015 WL 456705, at *7–*8 (E.D. Pa. Feb. 2, 2015).

[122] *Commonwealth v. Simmons*, 662 A.2d 621, 630–31 (Pa. 1995).

[123] *Commonwealth v. Walker*, 92 A.3d 766, 783–84 (Pa. 2014).

[124] *Id.* at 486.

[125] ECF Doc. No. 23 at 18–19, ¶ 10.e (using the pagination assigned by the CM/ECF docketing system).

[126] *See Outerbridge III*.

[127] 18 Pa. Cons. Stat. Ann. § 1102.1(a)(1), (2).

[128] *Cabrera v. Attorney Gen. of the United States*, 921 F.3d 401, 404 (3d Cir. 2019) (*Real Alts., Inc. v. Sec'y Dep't of Health & Human Servs.*, 867 F.3d 338, 348 (3d Cir. 2017) (emphasis in original)).

[129] *Id.* (quoting *City of New Orleans v. Duke*, 427 U.S. 297, 303 (1976) then *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993)).

[130] *Id.* (quoting *United States v. Pollard*, 326 F.3d 397, 408 (3d Cir. 2003) then *Real Alts.*, 867 F.3d at 348)).

[131] *Id.* (quoting *Brian B. ex rel. Lois B. v. Pa. Dep't of Educ.*, 230 F.3d 582, 586 (3d Cir. 2000)).

[132] *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 83 (2000).

[133] N.T. March 15, 2013 at 170–77.

[134] *Commonwealth v. Brown*, 52 A.3d 1139 (Pa. 2012).

[135] *California v. Green*, 399 U.S. 149, 164 (1970); *Ford v. Superintendent, SCI-Frackville*, No. 12-1278, 2013 WL 5457801, at *6 (E.D. Pa. Sept. 19, 2013).

[136] N.T. March 15, 2013 at 203–04. The trial court instructed the jury: "[Y]ou may consider whether the witness has any friendship toward or animosity toward any other persons concerned in the case. You may consider the behavior of the witness on the witness stand and his or her demeanor, his or her manner of testifying, and whether he or she shows any bias or prejudice that might color his or her testimony."

[137] *Miller-El*, 537 U.S. at 335–37 (citing 28 U.S.C. § 2253).

[138] 28 U.S.C. § 2253.

[139] *Miller-El*, 537 U.S. at 336.

[140] *Id.* at 327 (citing 28 U.S.C. § 2253(c)(2)).

---

[141] *Id.* at 323 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

[142] Fed. R. App. P. 22(b)(1).